UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



| | |
|---|---|
| JOAN BENNETT, ADMINISTRATRIX OF THE ESTATE OF WALTER BENNETT,<br>Plaintiff,<br><br>VS.<br><br>UNITED STATES OF AMERICA, and H. Paul Rico,<br>Defendants. | 04cv10011 PBS<br><br>Civil Action No.: MAGISTRATE JUDGE Bowler<br><br>RECEIPT # 52879<br>AMOUNT $ 150<br>SUMMONS ISSUED<br>LOCAL RULE 4.1<br>WAIVER FORM<br>MCF ISSUED<br>BY DPTY. CLK.<br>DATE 1-6-04 |

COMPLAINT

I. INTRODUCTION

The United States has a duty to enforce its laws and to detect and prosecute crime. The Federal Bureau of Investigation (hereinafter FBI) is empowered and required by 28 U.S.C. §§533 to maintain law and order and to investigate and to prosecute federal crimes. In the exercise of its duty to investigate and prosecute crime, the FBI is empowered to utilize informers from within the ranks of the criminal element. However, this unholy alliance leads to civil and criminal liability when in the utilization of these informants the FBI allows these informants to trample the rights of other individuals.

1

## II. PARTIES

1. Joan Bennett is a resident of Abington, Massachusetts, a citizen of the United States, the daughter of the deceased Walter Bennett and Administratrix of the Estate of Walter Bennett pursuant to appointment by the Suffolk County Probate Court Probate Number 02P2113 on March 7, 2003.

2. The United States of America is a defendant pursuant to the Federal Tort Claims Act, 28 U.S.C. §§1346 and 2671 et seq. arising from certain intentional and/ or negligent acts and omissions of its employees. The Federal Bureau of Investigation ("FBI") is an agency of the United States of America pursuant to 28 U.S.C. § 2671 et seq. At all relevant times alleged herein, the employees and agents of the said agency were acting within the scope of their office and employment by the United States of America.

3. Defendant H. Paul Rico ("Rico") is a natural person with a residence in the State of Florida. At all relevant times alleged herein, Mr. Rico was acting within the scope of his employment as a special agent or special agent in charge of the FBI. Rico is sued individually and in his official capacity.

## III. JURISDICTION AND VENUE

4. This action seeks recovery against the United States of America under the Federal Tort Claims Act 28 U.S.C. § 2671 et seq., for the wrongful actions and/or omissions, which were negligent, intentional or otherwise wrongful, of its employees acting within the scope of their office or employment under circumstances where, if they were private

persons would be liable to the plaintiff in accordance with the laws of the Commonwealth of Massachusetts.

5. Jurisdiction is therefore also based on 28 U.S.C. § 1346.

6. Pursuant to U.S.C. § 2675 and 28 C.F.R. § 14.1 et seq. the Plaintiff Joan Bennett, Administratrix of the Estate of Walter Bennett presented a claim for damages and injuries to the United States on or about March 14, 2003, and the FBI has made no final disposition of claims within the six months of being served the same. The Plaintiff elects to deem the claim "finally denied" for purposes of 28 U.S.C. §2675.

7. Actions are also brought against the individual Defendant H. Paul Rico for the harms caused while that defendant was acting under color of the laws of the United States for depriving the plaintiffs of their rights as provided and guaranteed by the Constitution of the United States.

8. Jurisdiction is grounded upon 28 U.S.C. § 1331 because this action arises under the Constitution of the United States.

9. Jurisdiction is also claimed pursuant to 28 U.S.C. 1367 because this court has original jurisdiction over the Federal Claims alleged herein and the related claims form part of the same "case or controversy under Article IV of the United States Constitution."

10. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. 1391 because substantial portions of the acts and omissions described herein occurred here.

## IV. THE GROUP

11. From on or before 1960 and continuing until on or about 1999, within the District of Massachusetts and elsewhere, Steven Flemmi, and others known and unknown, were members and associates of a criminal organization known by various names such as "Winter Hill," "the Hill," "the Winter Hill Gang," and "South Boston," (hereinafter the "Group"), whose members and associates associated together and with others for the purpose of, among other things, earning money through extortion, loan-sharking, bookmaking, trafficking in narcotics and other controlled substances, and committing crimes of violence including murder, attempted murder, and assault.

12. At various times, Steven Flemmi, was a member of the Group who engaged in criminal activities, including extortion and money laundering, with and at the behest of leaders of the Group.

## GOALS AND PURPOSES OF THE ENTERPRISE

13. The primary goals and purposes of the Group included the following:

   a. Generating money for members and associates of the enterprise through extortion, loan-sharking, bookmaking, and the sale and distribution of narcotics and other controlled substances;

   b. Preserving and protecting the enterprise's territories, operations, and profits through the use of violence and threats of violence;

   c. Promoting and enhancing the prestige, reputation, and position of the enterprise with respect to rival criminal organizations, victims, and members of the public through the use of violence and threats of violence;

    d.    Intimidating and punishing members, workers, and associates of the enterprise who had fallen into disfavor or who had failed to remain loyal to the leadership of the enterprise; and

    e.    Protecting the enterprise and its members from criminal prosecution through efforts to obstruct justice, including the use of violence and threats of violence against potential witnesses.

### MEANS AND METHODS OF THE ENTERPRISE

14.    To further their goal of generating money for the enterprise, Steven Flemmi, and other members and associates of the Group extorted money from persons generating illegal income, including persons engaged in the distribution of narcotics and other controlled substances, in bookmaking, and in loan-sharking. In order to operate their illegal businesses without reprisals or interference from the Group, drug dealers, bookmakers, and loan sharks were required to make regular scheduled payments in the form of lump sums, sometimes referred to as "fines," paid on one or several occasions.

15.    To further their goal of generating money for the enterprise, Steven Flemmi and other members and associates of the Group also extorted money and other things of value from persons engaged in commercial activities, such as the operations of taverns, liquor stores, and real estate and lending transactions and from persons who otherwise had access to large amounts of funds.

16.    To further their goal of generating money for the enterprise, members and associates of the Group also engaged in income-generating criminal businesses, including bookmaking

and loan-sharking operations and wholesale and retail trafficking in narcotics and other controlled substances.

17. As a means of preserving and protecting the enterprise and its leadership from prosecution, members and associates of the Group engaged in activities designed to hinder and obstruct the administration of justice. These activities included, but were not limited to, using and threatening to use violence, including murder, against actual and potential witnesses with knowledge of the criminal activities of the Group.

18. Members and associates of the Group attempted to monitor the activities of grand juries investigating the Group and to improperly influence the testimony of witnesses called before those grand juries, as well as to improperly influence courts conducting proceeding related to members and associates of the Group.

19. The leadership of the Group at times arranged for or funded, in whole or in part, legal representation of persons facing criminal charges who were associated with the Group and who were believed to be potentially damaging witnesses against the leadership of the Group.

20. Members and associates of the Group at times fled the jurisdiction to avoid apprehension by federal and state law enforcement authorities and were provided financial assistance by other members and associates of the Group.

## THE RACKETEERING CONSPIRACY

21. From in or before 1960 and continuing until in or about 1999, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, Steven

Flemmi and others known and unknown, being persons employed by and associated with the Group, which enterprise engaged in, and whose activities affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962 (c), that is, to conduct and participate, directly and indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering activity, as that term is defined by Title 18, United States Code, Sections 1961 (1) and 1961 (5).

## V. THE FBI & FLEMMI

22. The FBI and H. Paul Rico began to develop Steven Flemmi as an informant in the 1960's.

23. In 1965 Special Agent Paul Rico selected Steven J. Flemmi to be developed as a "Top Echelon" informant. In developing the relationship, Rico abandoned reasonable care in maintaining the distance required in the treatment of such an informant. Instead, Rico stated he and Flemmi were allies in a common cause. Rico promised Flemmi that if he served as an informant the FBI would protect him.

24. In February of 1967, Flemmi was designated a "Top Echelon" informant. At that time Rico wrote that Flemmi had been involved in bookmaking, shylocking and a suspect possibly involved in gangland slaying.

25. Because the development of a Top Echelon informant was regarded as a matter of achievement in the FBI, Mr. Rico had personal reasons to preserve and protect Steven Flemmi's informant status. A decision by FBI supervisors to charge Steven Flemmi for any of his ongoing criminal activities would have made it likely that Mr. Rico's source

would no longer be available to cooperate, Rico had promised Flemmi that he would not be prosecuted for crimes he committed while serving as an informant. Reporting criminal activities in accordance with the Memorandum and FBI Manual would have made it likely that Mr. Rico would be unable to keep the promise he had made.

26. At all times relevant in this complaint the FBI knew Steven Flemmi and other associates of them were engaged in criminal enterprises. The persons so acting were known within the FBI as the "Winter Hill Gang" or the "Group". Among the criminal enterprises performed by this gang of associates were murder, bribery, extortion, loan sharking and illegal gambling within the Boston area.

27. At all relevant times the Boston Office of the FBI was investigating the Boston Branch of La Costra Nostra, another criminal organization whose crimes were also subject to the jurisdictional authority of the FBI. Informants such as Steven Flemmi were specifically enlisted to provide useful information for the investigating activities regarding La Costra Nostra.

28. Steven Flemmi was enlisted as an FBI informant and agreed to cooperate with the FBI and to provide agents with information regarding activities of the La Costra Nostra.

29. Special Agents of the FBI, including the defendant Rico knew that Flemmi was engaged in serious criminal activities in the Boston area.

30. During the relevant times set forth herein, FBI agents were to document all contacts between agents and informants on Form 209. At all relevant times set forth herein, the FBI and the named defendants violated this directive.

31. While Rico knew that the FBI rules required the completion of Form 209 after each contact with Steven Flemmi, Rico failed to comply with the policy.

32. As the relationship between Steven Flemmi developed, Agent Rico either failed to file Form 209 or placed false and/or misleading information in it.

33. All defendants, individually, and/or in concert, negligently, intentionally, or otherwise wrongfully, failed to follow Federal guidelines in the management, documentation, reporting and handling of informants and individuals otherwise known to have committed acts.

34. The United States, through its agencies and supervisory personnel, failed to properly train and supervise law enforcement officials to insure compliance with regulations and mandates for operation of its law enforcement agencies.

35. The defendant Rico knew or had reason to know that Flemmi continued to be engaged in criminal wrongdoing in violation of state and federal law.

36. Agents of the FBI notified Flemmi of various investigations initiated by other law enforcement agencies. In addition the same agents failed to follow FBI requirements and directives by negligently failing or omitting to file required reports, and by negligently failing to notify supervisor and other Department of Justice employees of activities by Flemmi.

37. The defendants herein negligently, intentionally and otherwise wrongfully failed to detect and prosecute criminal activities when they knew or should have known of such activities.

38. The defendants negligently, intentionally and otherwise wrongfully failed to properly index and file information regarding their contacts with Flemmi and the activities conducted by Flemmi.

39. The FBI negligently, intentionally and otherwise wrongfully failed to train its employees and enforce the promulgated Rules and Regulations and the defendants herein negligently failed to follow their mandates. Due to these failures, Flemmi was allowed to continue to engage in criminal activities such as the murder of Walter Bennett.

40. Rico and others regularly notified Flemmi about ongoing criminal investigations and provided the names of informants and complainants to them.

41. Flemmi informed Rico that he was involved in the murder of the brother of the Plaintiff's decedent, Brother Edward "Wimpy" Bennett.

42. Rico knew or should have known that Flemmi was involved in the murder of Edward "Wimpy" Bennett.

43. In February 1967, Rico understood that Flemmi engaged in bookmaking, loan-sharking, robberies and gangland murders. Rico knew or should have known that these activities would continue and that Flemmi posed a danger to the life of Walter Bennett, among others. 91 F.Supp.2d at 179.

44. Rico knew or should have known that Flemmi was going to murder Walter Bennett prior to the murder of Walter Bennett. Despite his knowledge of the impending murder and ability to prevent the murder, Rico did nothing to prevent the murder.

45. The murder of Walter Bennett was accomplished by Flemmi in furtherance of the agreement and conspiracy with the FBI whereby Flemmi was allowed to accomplish his criminal goals in exchange for his providing information to Rico.

46. On or about December 23, 1967, Flemmi murdered Walter Bennett. Prior to his death, Walter Bennett endured severe conscience pain and suffering.

47. Rico did not provide those investigating the murder of Walter Bennett with any information regarding the murder.

48. Rico assisted, condoned, participated and caused the death of Walter Bennett in order to strengthen and solidify Flemmi's criminal operations and thereby assure that he would continue to receive information from Flemmi.

49. Subsequent to his murder of Walter Bennett, Flemmi continued to provide information to Rico regarding the activities of LCN.

50. Subsequent to his murder of Walter Bennett, Flemmi was investigated for other crimes but protected from prosecution and apprehension by Rico.

51. The Defendants have, by false and misleading conduct, deliberately, fraudulently and/or otherwise concealed the truth regarding their tortuous and wrongful actions from the Plaintiffs and others, notwithstanding their diligence, for a period of time beginning prior to the murder of Walter Bennett and continuing through the present.

52. In September 1969, Rico warned Flemmi that indictments were "coming down" in a case involving the bombing of an automobile and suggested that Flemmi leave town. Mr. Flemmi did so.

53. A few days later, indictments were issued charging Mr. Flemmi with the bombing. Four days after the issuance of the indictment, Mr. Flemmi's status as an informant was subject to administrative closure by the FBI.

54. Even though a federal fugitive warrant had been issued for Mr. Flemmi's arrest, Mr. Rico continued to stay in contact with Mr. Flemmi. Mr. Rico failed to convey such information to other agents charged with the pursuit and arrest of Mr. Flemmi. No reports or forms recordings those contracts were ever produced by Mr. Rico.

55. Francis Salemme also indicted and charged with the Fitzgerald bombing, was arrested, convicted and served fifteen years in prison. As for Mr. Flemmi, the charges against him were later dismissed. Following the Salemme conviction, Rico had assured Flemmi that upon his return to Boston, he would be released on bail and the charges against him would be dismissed. By 1974, Mr. Flemmi was free to return to Boston and continue his criminal activities.

56. Francis Salemme in the trial of U.S.A. v John Connolly testified that Stephen Flemmi murdered Walter Bennett.

## FACTS OF THE CONTINUED CONSPIRACY TO HIDE THE BENNETT MURDERS

57. As set forth herein, the Defendant H. Paul Rico knew or should have known that Steven Flemmi originally murdered the Walter Bennett, continued to maintain the silence of witnesses through threats of violence and death and allowed the continual violation of the Plaintiffs' First, Fourth and Fifth Amendment rights, their civil rights and to suffer damages.

58. Defendant H. Paul Rico, the FBI and the United States, by false and misleading conduct, deliberately, fraudulently and/or otherwise concealed the truth regarding their tortious and wrongful actions from the Plaintiff and others, notwithstanding their diligence, for a period of time beginning prior to the murder of the Plaintiff's decedent Walter Bennett through the present.

59. Defendant H. Paul Rico, the FBI and/or the United States continuously, publicly and privately asserted that they were not in possession of any documents or information

relative to their alleged tortious and wrongful actions and provided false and misleading information as to their alleged tortious and wrongful actions.

## COUNT I

### BIVENS CLAIMS (FOURTH AND FIFTH AMENDMENT AND THE CIVIL RIGHTS ACT OF 1988)

60. The allegations set forth in paragraphs 1 to 59 are incorporated herein by reference.
61. The Defendant H. Paul Rico acting under the color of law of the United States of America and with deliberate indifference to the constitutional rights of the deceased Walter Bennett and within the course and/or scope of his office or employment as a federal agent with the FBI, an agency of the Defendant United States, committed the acts as enumerated within this Complaint and knew or should have known that the consequences of his actions would result in a violation of the deceased Walter Bennett's constitutional rights including but not limited to the First, Fourth and Fifth Amendments to the United States Constitution and the Civil Rights Act of 1983.
62. By reason of the Defendant H. Paul Rico violation of the deceased Walter Bennett's constitutional rights as guaranteed by the First, Fourth and Fifths to the United States Constitution and the Civil Rights Act of 1983, the Plaintiffs' have suffered damages in an amount equal to the loss of the Plaintiff's parental consortium, society and companionship of their father and resultant emotional distress.

63. Wherefore, the Plaintiff demands judgment, against the Defendant H. Paul Rico for an amount to be determined at trial together with costs and attorneys fees pursuant to 42 U.S.C §1988.

## COUNT II

### NEGLIGENCE/FEDERAL TORT CLAIMS ACT

64. The allegations contained in paragraphs 1 to 63 are incorporated herein by reference.

65. As a direct and proximate result of the intentional, negligent and wrongful conduct of its employee H. Paul Rico and the supervisory staff of the FBI, the Plaintiffs' have suffered damages in an amount equal to the loss of parental consortium, society and companionship of their father and resultant emotional distress.

66. The Defendant United States is liable for negligent actions of its employee H. Paul Rico pursuant to 28 U.S.C.§2671, the Federal Torts Claims Act.

67. Wherefore, the Plaintiffs demand judgment, jointly, and severally, against the defendant H. Paul Rico and the United States in an amount to be determined at trial together with costs and attorneys fees.

## COUNT III

### CIVIL CONSPIRACY/FEDERAL TORTS CLAIMS ACT

68. The allegations set forth in paragraphs 1 to 67 are incorporated herein by reference.

73. The Defendant H. Paul Rico and the supervisory staff of the FBI individually and

69. The Defendant H. Paul Rico and the supervisory staff of the FBI individually and collectively conspired within the course and/or scope of their office or employment as federal agents with the FBI, to commit the acts as enumerated within this Complaint and knew or should have known that their negligent and/or intentional actions would result in Plaintiffs' loss of parental consortium, society and companionship of their father and resultant emotional distress.

70. The Defendant United States is liable for the intentional and/or negligent actions of its employee H. Paul Rico and the supervisory staff of the FBI pursuant to 28 U.S.C. §2671 the Federal Tort Claims Act.

71. Wherefore, the Plaintiffs demand judgment, jointly and severally against the Defendant H. Paul Rico and the United States in an amount to be determined at trial together with costs and attorneys fees.

## COUNT IV
### WRONGFUL DEATH/FEDERAL TORTS CLAIM ACT

72. The allegations contained in paragraphs 1 to 71 are incorporated herein by reference.

73. The Defendant H. Paul Rico and the supervisory staff of the FBI individually and collectively conspired within the course and/or scope of their office or employment as federal agents with the FBI to commit the acts as enumerated within this Complaint and knew or should have known that their negligent and/or intentional actions would result in the wrongful death of Walter Bennett.

74. The Defendant United States is liable for the intentional and/or negligent actions of its employee H. Paul Rico and the supervisory staff of the FBI pursuant to 28 USC § 2671 the Federal Tort Claims Act.

75. Wherefore, the Plaintiff Joan Bennett Administratrix of the Estate of Walter Bennett demands judgment, jointly and severally against the Defendants H. Paul Rico and the United States for the wrongful death of Walter Bennett in an amount to be determined at trial together with costs and attorneys fees.

Respectfully submitted,
Joan Bennett, Administratrix
Of the Estate of Walter Bennett
By its attorney,

_____
Paul J. Gannon, Esq.
BBO No.: 548865

_____
Francis J. Hurley, Esq.
BBO No.: 553199
Gannon and Hurley, P.C.
P.O. Box E46
470 West Broadway
South Boston, MA 02127
617-269-1993

Dated: December 31, 2003